756 N.E.2d 990 (2001)
In the Matter of the PATERNITY OF M.G.S.
Joel W. Wachowski, Appellant-Petitioner,
In re the Adoption of M.G.S.
Joel W. Wachowski, Appellant-Petitioner,
v.
John and Sarah Beke, Appellee-Respondents.
No. 64A03-0104-JV-120.
Court of Appeals of Indiana.
October 11, 2001.
*995 David L. Chidester, Valparaiso, IN, Attorney for Appellant. *991 *992 *993

*994 OPINION
BAKER, Judge.
Appellant-petitioner Joel W. Wachowski appeals the trial court's judgment that his consent to the adoption of M.G.S., his minor daughter, is irrevocably implied because he failed to file a paternity action within thirty days of receiving notice of the proposed adoption in accordance with IND. CODE § 31-19-9-15. Specifically, Wachowski claims that: 1) the thirty-day time limit is not jurisdictional and the trial court erred in failing to consider any equitable deviations from the time limit; 2) the trial court erred in finding that the prospective adoption petitioners complied with the statutory pre-birth notice of adoption requirements; and 3) Indiana's statutorily created "irrevocable implied consent" to adoption by the putative father violates his constitutional due process and equal protection rights.

FACTS
The facts most favorable to the judgment are that Natalie Soltysik and Wachowski were involved in a relationship, during which Soltysik became pregnant. While she was pregnant, Soltysik began to consider putting the baby up for adoption. She determined that if she and Wachowski established a permanent relationship, then they would keep the baby and raise it together; otherwise, she would place the baby for adoption by her sister and brother-in-law, Sarah and John Beke (the Bekes).
Before the birth of the child, the Bekes had an attorney prepare a document on their behalf as prospective adoptive parents. On April 5, 2000, Natalie's brother, David Soltysik, served Wachowski with the document entitled "Notice Pursuant to Indiana Code § 31-19-3-1" (Notice). Appendix at 37. The Notice informed Wachowski that Soltysik intended to put the baby up for adoption. It also advised Wachowski that in order to contest the adoption, he must file a paternity action to establish a relationship with the unborn child within thirty days after receiving this Notice, or his consent to the adoption would be irrevocably implied. App. at 37. Consequently, he would lose "the right to contest the adoption, the validity of his implied consent to the adoption, the termination of the parent-child relationship, and the validity of his implied consent to the termination of the parent-child relationship." App. at 37. Below the attorney's signature at the base of the Notice, was a clause stating: "I further acknowledge that nothing that the mother of the child or anyone else may tell me about her intentions regarding a possible adoption of the child can relieve me of the obligations imposed upon me having received this notice." App. at 37. This language regarding any representations by the mother and other persons was repeated in the acknowledgement of receipt clause at the bottom of the Notice. Wachowski kept the Notice and did not execute an acknowledgement of receipt.
Wachowski failed to file a paternity action within thirty days of receiving the Notice. He testified that he relied upon Soltysik's representations that adoption was just one option she was considering, *996 and that he need not sign the form or unnecessarily concern himself about it. Record at 29. Soltysik also informed Wachowski that if adoption was decided, she had made arrangements with an attorney. Soltysik gave birth to a daughter, M.G.S., on May 23, 2000. Wachowski took flowers to the hospital and visited the baby in the nursery. He also purchased a car seat and some clothes for the baby.[1] Wachowski registered as a putative father with the Indiana Department of Health on June 15, 2000. Two weeks after M.G.S's birth, Soltysik told Wachowski that their relationship was over. When M.G.S. was one month old, Soltysik consented to her adoption by the Bekes.
On July 19, 2000, Wachowski filed a paternity action in the Porter Circuit Court. The Bekes filed motions to intervene in the paternity action and for dismissal. On August 17, 2000, the Bekes filed their petition for adoption in the St. Joseph Circuit Court. The paternity proceeding was subsequently consolidated into the adoption proceeding in Porter Circuit Court.
The Porter Circuit Court held a hearing on the paternity and adoption issues on December 6, 2000. On March 22, 2001, the trial court issued its order and findings. Specifically, the trial court found that the Bekes had complied with I.C. § 31-19-3-1 in giving pre-birth notice of the adoption to Wachowski. The trial court also found that Wachowski had failed to file his paternity action within thirty days of receiving notice of the adoption and, therefore, his consent to adoption was irrevocably implied pursuant to I.C. § 31-19-9-15. App. at 14. Accordingly, the trial court found that Wachowski "is not entitled to contest the adoption filed herein or the validity of his consent to the adoption, nor is he entitled to establish paternity of the child in this proceeding." App. at 14. Wachowski now appeals.

DISCUSSION AND DECISION

I. Standard of Review
The trial court in this case entered its own findings of fact pursuant to Ind.Trial Rule 52(A). When reviewing such findings, we employ a two-tiered standard of review. Reinking v. Metro. Bd. of Zoning Appeals of Marion County, 671 N.E.2d 137, 140 (Ind.Ct.App.1996). First, we determine whether the findings support the judgment. Id. Then, we determine whether the conclusions of law and the judgment are clearly erroneous based upon the findings of the court. Id. When a trial court enters such findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not entered findings. Id. We may affirm a general judgment on any theory supported by the evidence. Id. We must determine whether the conclusions of law and judgment are clearly erroneous in light of the findings. Id.[2]

II. Wachowski's Claims

A. Jurisdiction
Wachowski first contends that the thirty-day time limit imposed by I.C. § 31-19-9-15[3] is not jurisdictional, and *997 the trial court should have concluded that his irrevocable implied consent was inequitable because his behavior clearly evinced an intent to establish parental rights. Specifically, Wachowski asserts that equitable deviation from the statutory time limit is warranted because he registered with the putative father registry twenty-three days after M.G.S.'s birth, tendered gifts to the mother and child, visited them at the hospital, discussed plans for their future, and filed his paternity action before the prospective adoptive parents filed their adoption petition. Appellant's brief at 8.
We initially note that jurisdiction "embraces three essential elements": jurisdiction of the subject matter, jurisdiction of the person, and jurisdiction of the particular case. State ex rel. Dean v. Tipton Circuit Court, 242 Ind. 642, 653, 181 N.E.2d 230, 235 (1962). Subject matter jurisdiction is the power of a court to hear a class of cases, while jurisdiction over the case is the power of the court to hear a particular case within the class of cases. Dixon v. Siwy, 661 N.E.2d 600, 605 n. 10 (Ind.Ct.App.1996). In this instance, it is undisputed that the trial court has subject matter over paternity actions. At issue, is whether the trial court had jurisdiction over this particular case, where the putative father filed the paternity action beyond the time limit set forth in the adoption statute.
In addressing this issue, we note that, while an ordinary statute of limitations may be waived and is subject to equitable tolling, a nonclaim statute is not. Burnett v. Villaneuve, 685 N.E.2d 1103, 1107 (Ind.Ct.App.1997). "A nonclaim statute is one which creates a right of action and has inherent in it the denial of a right of action. It imposes a condition precedent the time element which is part of the action itself." Wawrinchak v. United States Steel Corp., 148 Ind.App. 444, 267 N.E.2d 395, 399 (1971). While nonclaim statutes limit the time in which a claim may be filed or an action brought, they have nothing in common and are not to be confused with general statutes of limitation. Donnella v. Crady, 135 Ind.App. 60, 63, 185 N.E.2d 623, 624 (1962), trans. denied. "The former creates a right of action if commenced within the time prescribed by the statute, whereas the latter creates a defense to an action brought after the expiration of the time allowed by law for the bringing of such an action." Id.
Thus, a statute is a nonclaim statute when "there is clearly evidenced a legislative intent in [the] statute to not merely withhold the remedy, but to take away the right of recovery where a claimant fails to present his claim as provided in the statute." Rising Sun State Bank v. Fessler, 400 N.E.2d 1164, 1166 (Ind.Ct. App.1980). While equitable principles may extend the time for commencing an action under statutes of limitations, nonclaim statutes impose a condition precedent to the enforcement of a right of action and are not subject to equitable exceptions. See id.
Before addressing the relevant portions of the adoption statute, we note that this statute creates a statutory proceeding unknown at common law. Adoptive Parents of M.L.V. v. Wilkens, 598 N.E.2d 1054, 1056 (Ind.1992). Accordingly, the statute must be strictly construed in favor of the rights of natural parents. Id. When interpreting the language of a statute, this court must construe it with *998 due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. Detterline v. Bonaventura, 465 N.E.2d 215, 218 (Ind.Ct.App.1984), trans. denied. We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. Id. When a statute is ambiguous, we will construe it to give effect the intent of the legislature. Id. However, if the statute is unambiguous, we must give effect to the plain, ordinary, and usual meaning of the words of the statute. State Bd. of Tax Comm'rs v. Jewell Grain Co., Inc., 556 N.E.2d 920, 921 (Ind.1990).
IND.CODE §§ 31-19-3-1 to 7 govern notice of adoption before the birth of the child. The authority for giving a putative father notice of the prospective adoption is found in I.C. § 31-19-3-1, which provides:
Before the birth of a child:
(1) a licensed child placing agency; or
(2) an attorney representing prospective adoptive parents of the child;
may serve the putative father of the child or cause the putative father to be served with actual notice that the mother of the child is considering an adoptive placement for the child.
I.C. § 31-19-9-15, the statute at issue in this case, provides that if the putative father fails to file a paternity action under Title 31, Article 14, within thirty days after receiving actual notice under I.C. § 31-19-3 of the mother's intent to proceed with an adoptive placement of the child, then his consent to the adoption is "irrevocably implied without further court action." Section 15 also provides that the putative father's irrevocable consent is implied regardless of whether the child is born before or after the expiration of the thirty-day period. I.C. § 31-19-9-15. Once a putative father's consent to adoption is irrevocably implied under section 15, he is "not entitled to contest the adoption or the validity of his implied consent to the adoption." I.C. § 31-19-9-16. Further, I.C. § 31-19-9-17(a) states:
A putative father whose consent to an adoption is implied under section 15 of this chapter is not entitled to establish paternity of the child:
(1) in a court proceeding under I.C. 31-14; or
(2) by executing a paternity affidavit under I.C. XX-XX-X-X.1.
An exception to this bar on establishing paternity is contained in subsection (b) of this statute, which provides that, "notwithstanding subsection (a), a putative father who is barred from establishing paternity under subsection (a) may establish paternity of the child in a court proceeding under I.C. 31-14"if the potential adoption has not been filed or falls through.
The plain language of I.C. § 31-19-9-15 indicates that it is a nonclaim statute. Specifically, I.C. § 31-19-9-15 clearly states that a putative father forgoes his right to establish paternity of the child if he fails to file his paternity action within thirty days of receiving notice of the potential adoption. Further, the jurisdictional nature of this time limit is supported by I.C. § 31-19-3-4, which states that the putative father loses his right to establish paternity of the child "under 31-14 or in a court of another state when that court would otherwise be competent to obtain jurisdiction over the paternity action." (emphasis supplied). From this language, it is reasonable to infer that if a foreign court is not competent to obtain jurisdiction over the paternity action when it is filed beyond the statutory time period, then a court of this state also lacks jurisdiction over the paternity suit when it is untimely filed.
Moreover, the intervention provisions that particularly pertain to paternity actions *999 brought after pre-birth notice of adoption do not support Wachowski's assertion that the time limit is not jurisdictional. Specifically, I.C. § 31-19-3-5 requires a "putative father who files a paternity action as described by I.C. XX-XX-X-XX(2), after receiving notice of a potential adoption from an attorney or licensed child placement agency ... [to] notify the attorney or agency that the paternity action has been filed." The paternity action described by I.C. § 31-19-9-15(2) is one brought during the thirty-day period following notice of the potential adoption.[4] I.C. § 31-19-3-6 then provides that if the putative father fails to notify the attorney or licensed child placement agency that he has brought this paternity action, then "the court having jurisdiction over the action shall allow the prospective adoptive parents to intervene." (emphasis supplied). These provisions contemplate that a court will have jurisdiction over a paternity action that is filed within the thirty-day time limit and they also establish that the prospective adoptive parents may intervene in such action. However, they do not refer to the right to intervene in a paternity action brought outside the statutory time limit, nor do they even contemplate the existence of such an action. From the clear language of I.C. § 31-19-9-15 and the corresponding pre-birth notice and intervention provisions, it is apparent that no right of action exists outside of the thirty-day statutory time limit. Thus, I.C. § 31-19-9-15 is a nonclaim statute and is not subject to any equitable exception.
Nevertheless, Wachowski asserts that his claim that the time limit is not jurisdictional, is supported by this court's opinions in In re Adoption of A.N.S., 741 N.E.2d 780 (Ind.Ct.App.2001), and Paternity of Baby Girl, 661 N.E.2d 873 (Ind.Ct.App. 1996). According to Wachowski, in In re Adoption of A.N.S., this court accepted that equitable arguments justify the circumvention of the thirty-day time limit by an otherwise worthy putative father. Appellant's brief at 11-13. In that case, the putative father had filed a paternity action thirty-eight days after receiving pre-birth notice of the potential adoption. 741 N.E.2d at 782. Meanwhile, mother married, and she and her husband filed a petition in which he sought to adopt the child. Id. The paternity court refused to recognize the implied consent time limit and allowed the putative father to establish his paternity. Id. The mother and husband failed to appeal the paternity court's ruling. Id.
Subsequently, the adoption court found that the putative father's consent to the adoption was irrevocably implied because he failed to file a paternity action within the thirty days allowed by statute. Id. However, upon father's motion to reconsider, the adoption court reversed its earlier decision and concluded that the irrevocable consent was inequitable based upon the putative father's eight-day delay in filing *1000 and the fact that the mother and husband did not file their adoption petition until several months after the paternity action was filed. Id. at 783.
On appeal by mother and husband, the issue before this court was whether the adoption court had erred by granting the putative father's motion to reconsider its ruling that he had impliedly consented to the adoption by not meeting the thirty-day deadline. Id. We did not reach the arguments of the parties because the paternity court adjudicated paternity before the adoption court ruled. Id. Rather, we concluded that "the paternity court's judgment, even if not technically correct pursuant to the notice statute, was a final appealable order that forecloses relitigation of [putative father's] paternity through a collateral attack in the adoption proceedings." Id. (emphasis supplied). Thus, while we recognized that the paternity and adoption courts had allowed for equitable deviation from the statutory time limit, we did not express our approval of the lower courts' actions or address their validity. Accordingly, our opinion in In re Adoption of A.N.S., does not stand for the proposition that this court accepts that equitable arguments justify circumvention of the thirty-day time limit.
Wachowski also claims that this court's opinion in Paternity of Baby Girl, 661 N.E.2d 873 (Ind.Ct.App.1996), included "an equitable legal analysis which would allow for deviation" from the strict statutory time limit. Appellant's brief at 13. However, in that case the prospective adoptive parents failed to comply with the pre-birth notice of adoption requirements by erroneously sending the putative father a copy of the post-birth statute and a letter indicating that he "may" be the father of the unborn child. Paternity of Baby Girl, 661 N.E.2d at 878. We did not employ an equitable analysis to deviate from the statutory time limit, rather we concluded that the putative father had been affirmatively misled as to the requirements for him to assert his parental rights and, therefore, his consent to adoption could not be irrevocably implied. Id.
Because we have determined that I.C. § 31-19-9-15 is a nonclaim statute, we are bound to conclude that Wachowski's consent to the adoption of M.G.S. was irrevocably implied because he failed to file a paternity action within the statutory time limit. However, we urge the General Assembly to reconsider the strict language and timetable set forth in the statute in order to prevent future injustice to a natural birth parent.
It is clear from the record that Wachowski intended to play an active role in his daughter's life and had no intention of relinquishing his parental rights by consenting to the adoption. His delay in filing was a result of his reliance upon Soltysik's assertions immediately after he received the pre-birth notice. Wachowski's misplaced reliance and resulting delay in filing the paternity action, means that he may never see M.G.S. again or have a significant involvement in her life. In contrast, Soltysik will very likely have ample opportunity to visit M.G.S. and to take an active part in her life, as Soltysik's sister and brother-in-law are actively seeking to adopt the child. Thus, while M.G.S. has been entirely separated from Wachowski and his family, she remains permanently attached to Soltysik and her family.
The United States Constitution recognizes a fundamental right to family integrity. Pence v. Pence, 667 N.E.2d 798, 800 (Ind.Ct.App.1996); Matter of Joseph, 416 N.E.2d 857, 859 (Ind.Ct.App.1981). The U.S. Supreme Court has recognized that the Fourteenth Amendment "protects the sanctity of family ... because the institution of family is deeply rooted in this Nation's history and tradition." Moore v. City of East Cleveland, 431 U.S. 494, 503, *1001 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Moreover, "the courts of this state have long and consistently held that the right to raise one's children is essential, basic, and more precious than property rights, and within the protection of the Fourteenth Amendment to the United States Constitution." EP v. Marion Co. Office of Family & Children, 653 N.E.2d 1026, 1031 (Ind.Ct. App.1995). Our supreme court has stated that the parent-child relationship is "a sacred and precious privilege." Partridge v. Partridge, 257 Ind. 81, 272 N.E.2d 448, 450 (1971). Thus, Wachowski has a fundamental right to family integrity, which is deeply rooted in our great Nation's history and tradition.
While this case is clearly one in which equity could do the greatest justice to Wachowski and M.G.S., our determination that I.C. § 31-19-9-15 is a nonclaim statute, compels us to hold that he is not entitled to equitable deviation from the thirty-day time limit. Accordingly, this court may not utilize equity to rectify this apparent injustice.

B. Defective Notice
Wachowski also contends that the trial court erred in finding that the Bekes strictly complied with the pre-birth notice provisions of the statute, such that his consent to the adoption could be irrevocably implied. Specifically, Wachowski raises eight issues relating to the alleged defectiveness of the Notice, claiming that it was confusing, misleading, and improperly served.
The required form of notice is set out in I.C. § 31-19-3-4. This statute requires that the putative father be informed, among other things, that in order to contest an adoption he must: 1) file a paternity action to establish a relationship with the unborn child; 2) commence that paternity action within thirty days of receipt of notice; and that 3) his failure to commence such action within the prescribed period results in the putative father's irrevocable implied consent to the adoption, and 4) he loses the right to contest the adoption and the validity of his implied consent to the adoption, as well as the right to establish paternity of the child under I.C. § 31-14. I.C. § 31-19-3-4. The form of notice also contains a clause advising the putative father that "nothing [the mother] or anyone else says [to him] relieves him of his obligations under this notice." I.C. § 31-19-3-4.
The Bekes' Notice to Wachowski follows the form of notice set out in the statute, except for the omission of the word "or" in the first paragraph. App. at 37. Wachowski asserts that this omission is potentially confusing and not in strict compliance with the statute. Specifically, the first paragraph of the statutory form states:
______ (putative father's name), who has been named as the father of the unborn child of ______ (birth mother's name), or who claims to be the father of the unborn child, is notified that _____ (birth mother's name) has expressed an intention to secure an adoptive placement for the child.
I.C. § 31-19-3-4 (emphasis supplied). The corresponding provision in the Notice received by Wachowski provides:
JOEL WACHOWSKI (spelling uncertain), who has been named as the father of the unborn child of NATALIE ANN SOLTYSIK who claims to be the father of the unborn child, is notified that NATALIE ANN SOLTYSIK has expressed an intention to secure an adoptive placement for the child.
App. at 37.
Before addressing Wachowski's claim, we observe that I.C. § 31-19-3-4 requires substantial compliance with the form of notice, not strict compliance. Further, compliance with the pre-birth notice provision of the adoption statute is sufficiently substantial "if the party receives *1002 notice which achieves that purpose for which the statute was intended." Paternity of Baby Girl, 661 N.E.2d at 877. In this instance, the omission complained of is a minor typographical or grammatical error. It is clear from the Notice as a whole that Soltysik was considering adoption and that Wachowski was required to file a paternity action within thirty days of notice if he wished to protect his parental rights. Thus, the omission is not materially misleading and does not render the Notice defective.
Wachowski also claims that the Notice was defective because it failed to inform him of his rights pursuant to I.C. § 31-19-9-17(b). That statute reinstates the putative father's right to establish paternity of the child in the event that the adoption does not ultimately take place. Inasmuch as the Bekes followed the form of notice set forth in I.C. § 31-19-3-4, and that form does not require reference to I.C. § 31-19-9-17(b) or its contents, we must reject Wachowski's claim.
Wachowski next asserts that the Bekes falsified the Notice because Soltysik was not really considering adoptive placement as she was "speaking to [him] about marriage." Appellant's brief at 18. However, Soltysik testified that she was considering adoption as an option. R. at 7-8, 10-11. Most importantly, the Notice clearly states: "Nothing NATALIE ANN SOLTYSIK or anyone else says to JOEL WACHOWSKI relieves JOEL WACHOWSKI of his obligations under this notice."[5] App. at 3. This language comports with the form of notice set forth in I.C. § 31-19-3-4, and firmly establishes that the putative father may not rely upon any representations by the mother to avoid his responsibilities under the statute. Thus, Wachowski's argument must fail.
Wachowski also complains that the attorney named on the Notice was not the attorney who was handling the adoption for the Bekes. According to Wachowski, Attorney Joel D. Kirsch was listed as the attorney for the Bekes, but Attorney Charles Rice was handling the adoption on their behalf. This distinction is important, insists Wachowski, because if the adoption was subsequently cancelled and he sought to reassert paternity pursuant to I.C. § 31-19-9-17, attorney Kirsch would have no knowledge about the status of the adoption. We note, however, that Sarah Beke testified that she retained Kirsch to prepare the adoption notice. R. at 53. Thus, Kirsch was the Bekes' attorney of record at that time that Wachowski was served with notice of the adoption and the Bekes' subsequent retention of attorney Rice is irrelevant to the sufficiency of that notice.
Wachowski also argues that, by placing the consent provision at the bottom of the notice, the Bekes gave him the false impression that he simply had to refuse to sign the form and register with the putative father registry to establish his lack of consent to the adoption. First, there is no consent provision at the bottom of the notice. Rather, there is a signature line for Wachowski to acknowledge receipt of the Notice, together with language restating that nothing that the mother or anyone else says "relieves Wachowski of his obligations under this notice."[6] Second, the plain language of the Notice informs *1003 Wachowski that if he wishes to contest the adoption, he must file a paternity action within thirty days. App. at 37. Because there is no consent provision and the Notice clearly states what measures the putative father must take to contest the adoption, we conclude that Wachowski's argument that he was misled is without merit.
Finally, Wachowski claims that service of the Notice was defective. Specifically, he asserts that the Bekes violated I.C. § 31-19-3-1 because they had Natalie's brother serve notice, rather than an attorney or child placement agency. He also asserts that the Bekes violated I.C. § 31-19-3-1 because service was not made by certified mail, sheriff, or publication, or with a "proper identifying date upon the notice, which would allow for proper computation of the thirty-day time limit." Appellant's brief at 18.
I.C. § 31-19-3-1 provides that a licensed child placing or an attorney representing the prospective adoptive parents "may serve the putative child or cause the putative father to be served with actual notice that the mother of the child is considering adoptive placement for the child." (emphasis supplied). Here, the Bekes' attorney prepared and signed the Notice, and the statute does not preclude the attorney from fulfilling the responsibility of service through another individual or entity. Moreover, the statute does not specify a required mode of service and contains no prohibition against personal service. Thus, actual service upon Wachowski by Soltysik's brother did not make the notice defective. With respect to an identifying date, the Notice is dated March 29, 2000, and was served on April 5, 2000. I.C. § 31-19-3-1 does not require that the service date appear on the notice, and the Notice Wachowski received clearly states that the putative father must file a paternity action "not more than thirty (30) days after receiving this notice." App. at 3. Wachowski does not contest that he received the notice on April 5, 2000. Thus, expiration of the thirty-day time limit was easily calculable and the notice was not defective.

C. Constitutional Claims
Finally, Wachowski contends that Indiana's statutorily created "irrevocable implied consent" to adoption by the putative father violates the Equal Protection Clause of the U.S. Constitution, the Equal Privileges and Immunities Clause of the Indiana Constitution, and the Due Process clauses of the U.S. and Indiana Constitutions. Appellant's brief at 8, 25. With respect to his claims regarding violation of equal protection, Wachowski acknowledges that our supreme court has determined that Indiana's statutory adoption provisions from I.C. § 31-19-3-1 to I.C. § 31-19-10-6, treat birth mothers differently from putative fathers for a variety of valid and constitutional reasons.[7] Nevertheless *1004 he asserts that two distinct portions of the statutory framework violate equal protection. Appellant's brief at 31.
First, Wachowski claims that a natural mother can more easily overcome a failed adoption and withdraw her consent than a putative father, whose implied consent is irrevocable, unless he obtains information, through his own efforts, that the adoption failed, and then files a paternity action pursuant to I.C. § 31-19-9-17(b). Appellant's brief at 8-9, 31. However, we need not address Wachowski's claim, as the issue is not ripe for judicial review. Ripeness involves the timing of judicial review and the principle that judicial machinery should be conserved for problems that are real and present or imminent, not squandered on problems that are abstract or hypothetical or remote. Carroll County Rural Elec. Membership Corp. v. Ind. Dept. of State Revenue, 733 N.E.2d 44, 48 (Ind.Tax 2000). In this instance, Wachowski's claims pertaining to the constitutionality of I.C. § 31-19-9-17(b), center upon a hypothetical event-failure of the Bekes' adoption of M.G.S. Inasmuch as Wachowski has not identified any portion of the record, facts, or testimony establishing that the impending adoption of M.G.S. has failed or is likely to do so, we must conclude that this issue is waived under the doctrine of ripeness.
Second, Wachowski contends that the form-of-notice provision in I.C. § 31-19-3-4, violates equal protection because it advises the putative father that anything the natural mother says in contravention of the notice is not valid. However, Wachowski's argument regarding this issue is limited to the simple assertion that this provision violates equal protection. Ind.Appellate Rule 46(A)(8) (2001) provides that the "[t]he argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning," along with citations to the authorities, statutes, and parts of the record relied upon, and a clear showing of how the issues and contentions in support thereof relate to the particular facts of the case under review. Because Wachowski has failed to comply with the appellate rule, he has waived any argument with respect to this particular claim.
Wachowski also presents two due process claims for our review. Specifically, he asserts that I.C. § 31-19-9-17(b) denies due process to a putative father whose child is not ultimately adopted, because it does not compel the attorney handling the adoption to notify him that the adoption has failed, and the putative father must keep abreast of the legal proceedings to determine whether his right to establish paternity has been reinstated. Inasmuch as we have already determined that Wachowski has not established that the adoption has or is likely to fail, this claim is not ripe for judicial review. See Carroll County Rural Elec. Membership Corp., 733 N.E.2d at 48.
We consolidate and restate Wachowski's second due process claim as: Whether Indiana's adoption statutes, which have established Wachowski's implied consent to the adoption, violated his constitutional due process rights. In addressing this contention, we note initially that statutes come to the court cloaked in a presumption of constitutionality. Adoptive Parents of M.L.V., 598 N.E.2d at 1058.
The Due Process Clause of the U.S. Constitution and the Due Course of Law Clause of the Indiana Constitution prohibit state action that deprives a person of life, liberty, or property without a fair proceeding. Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg, 694 N.E.2d 222, 241 (Ind.1997) (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. *1005 865 (1950)). The same analysis is applicable to both federal and state claims. Id. "`An essential principle of due process is that deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Id. (quoting Cleveland Bd. of Educ., v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494, (1985)). We must identify the precise nature of the private interest threatened by the State before we can properly evaluate the adequacy of the State's process. Lehr v. Robertson, 463 U.S. 248, 257, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).
In addition to guaranteeing fair process, the Due Process Clause also provides heightened protection against state interference with certain fundamental rights and liberty interests. Carlberg, 694 N.E.2d at 242 (citing Reno v. Flores, 507 U.S. 292, 301-03, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), and Planned Parenthood v. Casey, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). It is well settled that the right to raise one's children is an essential, basic right, more precious than property rights, within the protection of the Fourteenth Amendment to the U.S. Constitution. See Matter of Paternity of Baby Girl, 661 N.E.2d 873, 877 (Ind.Ct. App.1996); E.P. v. Marion County Office of Family & Children, 653 N.E.2d 1026, 1031 (Ind.Ct.App.1995) (citing Pierce v. Society of Sisters, 268 U.S. 510, 533, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and Meyer v. Nebraska, 262 U.S. 390, 398, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). Parental rights are sufficiently vital that, under the appropriate circumstances, they merit constitutional protection that will supersede state law. Lehr, 463 U.S. at 257-58, 103 S.Ct. 2985.
The United States Supreme Court has outlined the constitutional protection that must be afforded unwed fathers in four major cases decided since 1972. See Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979); Lehr, 463 U.S. 248, 103 S.Ct. 2985. These cases combine to instruct us that, while the biological link between a putative father and his child alone does not warrant significant constitutional protection, an unwed father nevertheless has a constitutionally protected inchoate or "opportunity interest" to form a relationship with his child. Lehr, 463 U.S. at 261-64, 103 S.Ct. 2985. Once the father has grasped this opportunity by demonstrating a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child, his parental rights with respect to that child ripen into an interest which is entitled to substantial protection under the Due Process Clause. Id.
While Indiana had not addressed whether the implied consent provisions of the adoption statute violate due process, several other jurisdictions have considered whether due process is violated by the imposition of statutory time limits within which a putative father must act to establish his parental rights. In Petition of K.J.R., 293 Ill.App.3d 49, 227 Ill.Dec. 190, 687 N.E.2d 113, 118 (1997), the Illinois Court of Appeals observed that a putative father's due process rights are not violated by requiring him to take specified actions within the time limits provided by statute, in order to preserve his parental rights. That court held that, at the point at which the putative father has failed to comply with the statutory time limit, the child's right to a stable environment and finality become paramount, and the putative father loses all rights to contest the adoption. Id.
The Nebraska Supreme Court has also addressed the constitutionality of a state *1006 statute that requires an unwed father's consent to adoption only if he files a notice of intent to claim paternity within five days after the birth of the child. See Friehe v. Schaad, 249 Neb. 825, 545 N.W.2d 740, 748-49 (1996). In upholding the statute, the court noted that the unwed father had it within his power to asserts his rights and obtain an opportunity to be heard simply by filing notice of his intent to claim paternity. Id. at 748-49.
The Court of Civil Appeals of Alabama, in M.V.S. v. V.M.D., 776 So.2d 142, 151 (Ala.Civ.App.1999), upheld a state statute requiring a putative father to file a notice of intent to claim paternity before the child's birth or within thirty days after the birth, otherwise his consent to adoption would be irrevocably implied. The court stated: "We do not think it violates the constitutional guarantee of due process, or that it is even harsh, to require those responsible for bringing children into the world outside of marriage to comply with those statutes that give them an opportunity to assert parental rights." Id. at 150. The Utah Supreme Court and the Court of Appeals of Oregon have also upheld similar statutes against due process challenges. See Wells v. Children's Aid Soc'y of Utah, 681 P.2d 199, 208 (Utah 1984) (upholding a state statute that required the putative to file his notice of claim to paternity before the date the child is released to the state adoption agency); Hylland v. Doe, 126 Or.App. 86, 867 P.2d 551, 557 (1994) (holding that an unwed father's failure to file a notice of paternity barred him from receiving notice of a petition for adoption and from contesting the adoption).
In the instant case, Wachowski asserts that the implied consent provisions of the adoption statute violate the U.S. and Indiana Constitutions by depriving him of the opportunity to parent his child. Appellant's brief at 12. However, Wachowski's consent to the adoption was not implied without notice. As previously determined, he was given notice of the potential adoption and adequately apprised of his obligation to file for paternity within thirty days in order to preserve his right to contest the adoption. Again, the undisputed evidence reveals that Wachowski failed to comply with those directives.
In Lehr, the U.S. Supreme Court ruled that due process for unwed fathers requires that state law provide an adequate opportunity for them to claim paternity and take responsibility for their children in a timely manner. 463 U.S. at 264, 103 S.Ct. 2985. The Supreme Court recognized that limits on procedural protection for a putative father are necessary from the standpoint of the child, who needs a stable start in life. Id. Here, Wachowski had it within his own power to assert his rights and obtain an opportunity to be heard by filing for paternity within the thirty-day statutory time limit. His own failure to act on the notice given to him deprived him of the opportunity to be heard. Thus, he was given an adequate opportunity to assert his parental rights, and his consent to adoption was implied only as a result of his failure to grasp that opportunity by not filing for paternity within the requisite time period. We, therefore, conclude that the implied consent provision of Indiana's adoption statutes do not violate the constitutional right to due process.[8]

*1007 CONCLUSION

In conclusion, we hold that the trial court did not err in finding that the thirty-day time limit imposed by IND.CODE § 31-19-9-15 is jurisdictional, and that the Bekes complied with the statutory pre-birth notice of adoption requirements. We also hold that Indiana's statutorily created "irrevocable implied consent" to adoption by the putative father does not violate Wachowski's constitutional due process rights.
Judgment affirmed.
FRIEDLANDER, J., concurs.
ROBB, J. concurs with opinion.
ROBB, Judge, concurs with separate opinion.
I fully concur with the majority opinion, but write separately to address a means which may prevent an inequitable final resolution of this case and protect the "best interest" of M.G.S. After reviewing the facts and circumstances of this case, I believe that the appointment of a guardian ad litem to represent M.G.S.'s interests at the adoption proceeding would be highly appropriate. Under Indiana Code section 29-3-2-3(a), the court must appoint a guardian ad litem to represent the interests of a minor "if the court determines that the ... minor is not represented or is not adequately represented by counsel." Indiana Trial Rule 17(C) provides, similarly, that "[i]f an infant ... is not represented, or is not adequately represented, the court shall appoint a guardian ad litem for him...." Under these rules, a trial judge need only appoint a guardian ad litem if he believes the minor is not otherwise adequately represented. Crayne v. M.K.R.L., 413 N.E.2d 311, 313 (Ind.Ct.App.1980). Although Wachowski's paternity petition is time-barred, a petition filed by M.G.S. would not violate the statute of limitations. A child may file a paternity petition at any time before he reaches the age of twenty. Ind.Code § 31-14-5-2(b). If the child is incompetent, he may file the petition through his guardian, guardian ad litem, or next friend. Ind.Code § 31-14-5-2(a). Thus, in my view the appointment of a guardian ad litem by the adoption court to represent M.G.S. may truly be the only way to safeguard the child's interests.
NOTES
[1] It is controverted whether Wachowski purchased these items before or after the birth of the baby. R. at 10, 26.
[2] Although we note that the Bekes failed to file an appellee's brief and, thus, the appellant need only establish prima facie error, see Santana v. Santana, 708 N.E.2d 886, 887 (Ind.Ct. App.1999), we choose to address this case on the merits.
[3] In his brief, Wachowski refers to the time limit as imposed by I.C. § 31-19-3-4. Appellant's brief at 9-10. In fact, the thirty-day time limit is established in I.C. § 31-19-9-15. I.C. § 31-19-3-4 simply prescribes the form of notice to be served on the putative father and makes reference to the time limit in the provisions of the form.
[4] I.C. § 31-19-9-15, provides, among other things:

The putative father's consent to adoption of the child is irrevocably implied without further court action if the father:
....
(2) files a paternity action:
(A) under I.C. 31-14; or
(B) in a court located in another state that is competent to obtain jurisdiction over the paternity action;
during the thirty day period prescribed by subdivision (1) and fails to establish paternity in the paternity proceeding within a reasonable period determined under IC XX-XX-XX-X through IC X-XX-XX-XX or the laws applicable to a court of another state when the court obtains jurisdiction over the paternity action.
[5] This language is not only contained in the body of the Notice, but is also restated in the "acknowledgment of receipt" paragraph below the attorney's signature. App. at 3. Thus, it receives double emphasis.
[6] Specifically, the provision at issue states:

I, JOEL WACHOWSKI, hereby acknowledge receiving the Notice Pursuant to Indiana Code § 31-19-3-1 on ___ day of _____, 2000, and I further acknowledge that nothing that the mother of the unborn child or anyone else may tell me about her intentions regarding a possible adoption of the child can relieve me of the obligations imposed upon me having received this Notice.
 ______
 JOEL WACHOWSKI
App. at 37.
[7] In Adoptive Parents of M.L.V. v. Wilkens, 598 N.E.2d 1054, 1058 (Ind.1992), our supreme court addressed whether the implied consent provisions of the adoption statute violate equal protection because they allow an unwed mother to veto an adoption without doing anything other than giving birth, but require unwed fathers to take action to establish paternity in order to acquire the same veto power. The court concluded that, given the biological differences between mothers and fathers, the legal differences between the two, and the purposes of the adoption statute, equal protection will tolerate Indiana's differential treatment of unwed parents in the adoption setting. Id. at 1059. Our supreme court did not address whether the implied consent provisions of the adoption statute violate due process.
[8] Wachowski relies upon this court's opinion in Walker v. Campbell, 711 N.E.2d 42 (Ind.Ct. App.1999), to argue that this court should find the implied consent provisions of the adoption statute violate due process. Appellant's brief at 27-28. However, as Wachowski observes, that opinion has been vacated and has no precedential value. Moreover, it is distinguishable from the case at bar. In Walker, the father's paternity was not established by formal court proceedings or otherwise. Id. at 46. Nevertheless, he exercised regular visitation with the child and paid monthly child support for six years before the implied consent provisions of Indiana's adoption statute operated to irrevocably imply his consent to the adoption. Id. We held that, under the limited circumstances where the father has made regular and substantial child support payments and has exercised regular visitation with the child, the Indiana adoption statutes' automatic extinguishment of the parental rights of a putative father, violate principles of procedural and substantive due process. Id. at 56-57.