**In re the Matter of the Involuntary Termination of the Parent–Child Relationship of C.C., Minor Child, and his Alleged Father, Kevin Cobb.**

**Kevin Cobb, Appellant–Respondent,**

**v.**

**Marion County Office of Family and Children, Appellee–Petitioner,**

**and**

**Child Advocates, Inc., Appellee (Guardian ad Litem).**

No. 49A04–0208–JV–385.

Court of Appeals of Indiana.

March 25, 2003.

Publication Ordered May 9, 2003.

Transfer Denied June 12, 2003.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, for Appellant.

Nicole Smith Hilz, Indianapolis, IN, for Appellee Marion County Office of Family and Children.

Jennifer Balhon, Child Advocates, Inc., Indianapolis, IN, for Appellee Child Advocates, Inc.

## OPINION

VAIDIK, Judge.

### Case Summary

Kevin Cobb appeals the termination of his parental rights. In particular, Cobb argues that the notice informing him of the final date of the termination hearing was defective under Indiana Code § 31–35–2–6.5 because it was mailed to an address where the Marion County Office of Family and Children (MCOFC) knew he no longer resided. Cobb also argues that the trial court violated his procedural due process rights to confront and cross-examine witnesses, to present a defense, and to be present at the hearing when it denied his counsel's motion for continuance during the final date of the termination hearing and proceeded in Cobb's absence. Lastly, Cobb argues that there was insufficient evidence to terminate his parental rights based on his failure to complete services because he did not know he had to complete any services.

Because the MCOFC mailed the hearing notice to Cobb's last known address, we find that the notice conformed to the statutory requirements. We conclude that Cobb's procedural due process rights were not violated because Cobb was represented at the final hearing date by counsel, Cobb had testified previously, and because Cobb does not have a constitutional right to be present at a termination hearing. Finally, because the record reveals that Cobb knew he had to complete services and failed to do so, we find that there is sufficient evidence to support the trial court's determination to terminate parental rights.

### Facts and Procedural History

C.C. was born on December 7, 1999, and tested positive for cocaine at his birth. Ten days later, when C.C. was released from the hospital, he went to live with foster parents, where he continues to reside.

On December 10, 1999, the MCOFC filed a Child in Need of Services (CHINS) petition on behalf of C.C. against C.C.'s mother, Tynetra Chapman, and Cobb, the alleged father. Both Chapman and Cobb appeared at the hearing. Cobb admitted to the allegations and was ordered to appear in January 2000 at a dispositional hearing. Cobb failed to appear at the dispositional hearing but was ordered to comply with a participation decree that, in part, required him: to notify the MCOFC of any change in address within five days, to complete a parenting assessment and home-based counseling program, to participate in a drug and alcohol assessment, to establish paternity, to visit C.C. on a consistent basis, to contact the caseworker every week, and to secure and maintain a stable source of income and suitable housing. In February 2000, Caseworker Christopher Cook, a family case manager with the MCOFC, mailed a letter to Cobb referring him to the following services: parenting assessment, visitation, and drug and alcohol evaluation.

In March 2000, a review hearing was held, and Cobb appeared. The court found that Cobb was not "cooperating or visiting[,]" ordered a "motherless blood draw to establish paternity[,]" and concluded that "services have been offered to both the child and the parent and that such services have not been effective or completed that would allow the child to be returned home." Exhibit p. 24. Cobb appeared at another review hearing in

May 2000 where the trial court again concluded that services had not been completed to allow the child to return home.

In August 2000, the MCOFC filed a petition for the involuntary termination of parental rights against both Chapman and Cobb. Cobb appeared at the initial hearing, and the final termination hearing was set to begin in December 2000. The December hearing date was changed when Cobb requested and was granted a continuance over the MCOFC's objection. The new hearing was set for March 2001, but again Cobb requested and was granted a continuance over the objection of the MCOFC, pushing the hearing date back to May 2001. Also, in March 2001, Caseworker Cook sent another letter to Cobb detailing the services Cobb was required to complete in order to gain custody of C.C. including: "Parenting Assessment, Home Based Counseling, Drug and Alcohol Assessment, Drug and Alcohol Counseling, Establish Paternity, Supervised Visitation, Obtain Adequate Housing, Maintain Suitable Employment." Exhibit p. 86.

In May 2001, both Cobb and his counsel appeared at the first day of the termination hearing. During the hearing, Cobb testified that he resided at a homeless shelter in Indianapolis with five of his children and had lived there since April 2001. Cobb had not notified the MCOFC of his change of address. He also stated he was collecting social security disability payments and food stamps. Cobb explained that he was in "total kidney failure" and placed "on a dialysis machine three (3) times a week" for "[f]our (4) hours per day." Tr. p. 12. He was not on a transplant list because in order to be on the list he first had to stop smoking, which he had not yet done. Cobb also admitted that he used cocaine and marijuana around four or five years before. When asked about whether he had completed the services required by the MCOFC, Cobb responded that he had not been assigned any services to complete and that to his knowledge "they were supposed to contact me and tell me what to do." Tr. p. 17. He stated that his only two conversations with Caseworker Cook involved his failed attempts to establish paternity. Cobb had tried about three times to establish paternity at the prosecutor's office, but he claimed they kept giving him the "run-around" and asking him to "fill out 1000 papers." Tr. p. 24. The last attempt to establish paternity was around November 2000. Cobb explained that the reason he failed to visit C.C. more than one time since October or November 2000 was because he did not want to bond with C.C. only to find out that C.C. was not his child.

In July 2001, Caseworker Cook mailed a letter to Cobb at the homeless shelter notifying him of the next hearing date on the termination petition in August 2001. Cobb appeared at that hearing. A third hearing date was set for November 2001, but Cobb requested and was granted an emergency continuance. Shortly thereafter, Caseworker Cook mailed a notice of the new hearing date, set for March 2002, to Cobb at the homeless shelter. Caseworker Cook also called the shelter to inquire about Cobb's whereabouts, but the shelter no longer knew where Cobb was. Cobb had failed to inform Caseworker Cook of his whereabouts.

In March 2002, at the final day of the termination hearing, counsel for Cobb appeared, but Cobb did not. Cobb's counsel repeatedly moved for and was denied a continuance based on Cobb's absence. Cobb's counsel continued representing him throughout the hearing. At the hearing, Caseworker Cook testified that Cobb failed to complete all the services he had been ordered to complete and that Cook

had informed Cobb of the negative consequences of not completing those services. In addition, Caseworker Cook testified that he had referred Cobb to the prosecutor's office to assist him in establishing paternity and had provided Cobb on at least two occasions with a letter explaining how Cobb could establish paternity.

In May 2002, the trial court ordered Cobb's parental rights terminated. Cobb filed a motion to correct error that was denied. This appeal ensued.

### Discussion and Decision

Cobb raises a number of issues on appeal, which we rephrase to be the following three arguments. First, Cobb argues that the notice informing him of the final date of the termination hearing was defective under Indiana Code § 31–35–2–6.5. Second, Cobb argues that the trial court violated his procedural due process rights when it denied his counsel's motion for continuance during the final date of the termination hearing and proceeded in Cobb's absence. Third, Cobb argues that there was insufficient evidence to terminate his parental rights. We consider each argument in turn.

### I. Statutory Notice Requirements

▇▇▇ Cobb argues that the letter notifying him of the final date of the termination hearing was ineffective because it was mailed to an address where the MCOFC knew Cobb no longer resided. Indiana Code § 31–35–2–6.5, which lays out the notice requirements in a termination proceeding, states in pertinent part:

At least ten (10) days before a hearing on a petition or motion under this chapter: the person or entity who filed the petition to terminate the parent-child relationship ... shall send notice of the review to ... The child's parent ... and ... Any other party to the child in need of services proceeding.[1]

This Court has held that Indiana Code § 31–35–2–6.5 does not require compliance with Indiana Trial Rule 4, which governs service of process and incorporates a jurisdictional component. *In re A.C.*, 770 N.E.2d 947, 950 (Ind.Ct.App.2002). Rather, in order to comply with the notice statute, one need only meet the requirements of Indiana Trial Rule 5, which governs service of subsequent papers and pleadings in the action. *Id.* Indiana Trial Rule 5 authorizes service by U.S. mail and "[s]ervice upon the attorney[2] or party shall be made by delivering or mailing a copy of the papers to him at his *last known address*." Ind. Trial Rule 5(B) (emphasis added); *see also In re A.C.*, 770 N.E.2d at 950. To require service of subsequent papers, such as hearing notices, to rise to the level of service of process "would permit a parent or other party entitled to notice to frustrate the process by failing to provide a correct address and would add unnecessarily to the expense and delay in termination proceedings when existing provisions adequately safeguard a parent's due process rights." *In re A.C.*, 770 N.E.2d at 950.

In this case, the notice sent to Cobb was not defective under the termination stat-

---

1. It is unclear whether, for purposes of notice, the MCOFC considered Cobb as a "parent" or "any other party" to the CHINS proceeding; regardless, he was entitled to notice under the statute. We further note that a parent-child relationship may be terminated even though paternity has yet to be established. *See In re Matter of A.C.B.*, 598 N.E.2d 570, 572 (Ind.Ct.App.1992).

2. While Indiana Trial Rule 5 allows for service upon a party's attorney, Indiana Code § 31–35–2–6.5 also requires service upon a parent even when a parent's attorney has been served. *See In re D.L.M.*, 725 N.E.2d 981, 983–84 (Ind.Ct.App.2000).

ute. At the initial termination hearing, Cobb testified he lived at the homeless shelter, so Caseworker Cook mailed subsequent notices to that address. It is true that upon sending notice for the final termination hearing Caseworker Cook knew Cobb no longer lived at the homeless shelter; nonetheless, the homeless shelter was the last known address that the MCOFC had for Cobb. Although Cobb's participation decree required him to notify the MCOFC of any change in address within five days, he did not do so. By sending notice to Cobb's last known address, i.e., the homeless shelter, the MCOFC complied with Indiana Trial Rule 5(B). In support of his proposition that "[s]ervice to an address known to be invalid is insufficient under Indiana law", Cobb cites two cases—*Hill v. Ramey*, 744 N.E.2d 509 (Ind.Ct.App.2001) and *Mills v. Coil*, 647 N.E.2d 679 (Ind.Ct.App.1995), *reh'g denied, trans. denied.* Appellant's Br. p. 11. However, both of those cases are inapposite because each pertains to service of process under Indiana Trial Rule 4 to obtain personal jurisdiction over a defendant and not service of subsequent papers under Indiana Trial Rule 5. *See Hill*, 744 N.E.2d at 511–13; *Mills*, 647 N.E.2d at 680–81. Therefore, because the MCOFC mailed notice of the final date of the termination hearing to Cobb's last known address in compliance with Indiana Trial Rule 5(B), we conclude that the notice sent to Cobb was not defective under Indiana Code § 31–35–2–6.5.

### II. Procedural Due Process

■ Cobb also argues that the trial court violated his procedural due process rights when it denied his counsel's motion for continuance during the final date of the termination hearing and proceeded in Cobb's absence. The Due Process Clause of the United States Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceed-

ing. *In re Paternity of M.G.S.*, 756 N.E.2d 990, 1004 (Ind.Ct.App.2001), *trans. denied.* When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process. *J.T. v. Marion County Office of Family & Children*, 740 N.E.2d 1261, 1264 (Ind.Ct.App.2000), *reh'g denied, trans. denied.* The nature of the process due in a termination of parental rights proceeding turns on the balancing of three factors: (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure. *Id.* This Court must first identify the precise nature of the private interest threatened by the State before we can properly evaluate the adequacy of the State's process. *In re M.G.S.*, 756 N.E.2d at 1005.

■ In this case, both the private interests and the countervailing governmental interests that are affected by the proceeding are substantial. In particular, the action concerns a parent's interest in the care, custody, and control of his child, which has been recognized as one of the most valued relationships in our culture. *In re J.T.*, 740 N.E.2d at 1264. Moreover, it is well settled that the right to raise one's child is an essential, basic right that is more precious than property rights. *In re M.G.S.*, 756 N.E.2d at 1005. As such, a parent's interest in the accuracy and justice of the decision is commanding. *In re J.T.*, 740 N.E.2d at 1264. On the other hand, the State's *parens patriae* interest in protecting the welfare of a child is also significant. *Id.* Delays in the adjudication of a case impose significant costs upon the functions of government as well as an intangible cost to the life of the child involved. *Id.* Here, the termination hearing has been continued several times upon

Cobb's request. Even though the termination proceedings were filed in August 2000, hearings were still occurring as late as March 2002. While continuances may be necessary to ensure the protection of a parent's due process rights, courts must also be cognizant of the strain these delays place upon a child.

When balancing the competing interests of a parent and the State, we must also consider the risk of error created by the challenged procedure. In this case, Cobb claims that the risk of error is great because in denying his counsel's motion for continuance Cobb was denied the right to confront and cross-examine witnesses, the right to present a defense, and the right to be present at the hearing. However, we find that Cobb's rights were not significantly compromised. In particular, Cobb was represented by counsel throughout the entire proceedings, even when he failed to appear on the final date. During the final date of the termination proceedings, Cobb's counsel was able to cross-examine, and did in fact cross-examine, the State's witnesses. *See id.* In addition, Cobb testified during the first day of the termination proceedings, so that his version of events was directly presented to the court. Finally, we observe that Cobb does not have a constitutional right to be present at a termination hearing.[3] *See id.* (concluding that an incarcerated parent does not have an absolute right to be physically present at a termination proceeding). Given that Cobb's counsel continued to represent him and cross-examine witnesses in Cobb's absence, that Cobb testified at the first date of the hearing, and that Cobb does not have a constitutional right to be present at the hearing, we conclude that the risk of error caused by the trial court's denial of the continuance was minimal.

Therefore, after balancing the substantial interest of Cobb with that of the State and in light of the minimal risk of error created by the challenged procedure, we conclude that the trial court's denial of Cobb's counsel's request for a continuance and its decision to proceed in Cobb's absence did not deny Cobb due process of law.

### III. Sufficiency of the Evidence

■ Cobb argues that there was insufficient evidence presented to terminate his parental rights. This Court will not set aside a trial court's judgment terminating a parent-child relationship unless we determine it is clearly erroneous. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind.Ct.App.2002). Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences drawn therefrom to support them. *Id.* In determining whether the evidence is sufficient to support the judgment terminating parental rights, this Court neither reweighs the evidence nor judges the credibility of the witnesses. *Id.*

In order to terminate a parent-child relationship, the MCOFC must allege in its petition that:

(A) one (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or

3. In light of this, we decline to address Cobb's argument that the State failed to prove that

he waived his right to be present at the termination hearing.

(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

Ind.Code § 31–35–2–4(b)(2). The MCOFC must prove each of the four statutory elements by clear and convincing evidence. *See* Ind.Code § 31–37–14–2; *In re E.S.,* 762 N.E.2d 1287, 1290 (Ind.Ct.App.2002).

As to the first element, there is no dispute that C.C. has been removed from Cobb's custody pursuant to a dispositional decree since January 2000, over six months from the date of the termination hearing. Thus, there is sufficient evidence to support the trial court's finding that C.C. has been removed for at least six months from Cobb pursuant to a dispositional decree.

■■■ As to the second element, there is also sufficient evidence to support the trial court's finding that there is a reasonable probability that the conditions that resulted in C.C.'s removal from and continued placement outside the care and custody of Cobb will not be remedied. Because the statute is written in the disjunctive, the trial court needs only find either that the conditions will not be remedied or that

the continuation of the parent-child relationship poses a threat to the child. *In re L.S.,* 717 N.E.2d 204, 209 (Ind.Ct.App. 1999), *reh'g denied, trans. denied, cert. denied,* 534 U.S. 1161, 122 S.Ct. 1197, 152 L.Ed.2d 136 (2002). In order to determine that the conditions will not be remedied, the trial court first should determine what conditions led the State to place the child outside the home and with foster care, and second whether there is a reasonable probability that those conditions will be remedied. *In re B.D.J.,* 728 N.E.2d 195, 201 (Ind.Ct.App.2000). When assessing a parent's fitness to care for a child, the trial court should view the parent as of the time of the termination hearing and take into account any evidence of changed conditions. *Id.* The trial court can properly consider the services that the State offered to the parent and the parent's response to those services. *Id.*

In this case, there is ample evidence to demonstrate that the conditions resulting in C.C.'s removal from Cobb's care will not be remedied. In particular, the evidence shows that Cobb has failed to comply with all the services he was required to complete in order to be reunited with C.C. After a dispositional hearing in January 2000, a participation decree was issued requiring Cobb to notify the MCOFC of any change in his address, to complete a parenting assessment and home-based counseling program, to participate in a drug and alcohol assessment, to establish paternity, to visit C.C. on a consistent basis, to contact the caseworker every week, and to secure and maintain a stable source of income and suitable housing. In February 2000, Caseworker Cook notified Cobb by letter that Cobb was required to complete the following services: parenting assessment, visitation, and drug and alcohol assessment. The evidence reveals that as of the final date of the termination

hearing in March 2002, Cobb had failed to complete every single required service. Specifically, Cobb never established the paternity of C.C. and only visited him once since leaving the hospital. Cobb only contacted Caseworker Cook two times, and Cobb never notified the MCOFC of any change in address. In addition, Cobb failed to complete a parenting assessment or home-based counseling program. Also, even though Cobb admitted to drug use in his past, he failed to complete a drug and alcohol assessment. Finally, Cobb's stay in the homeless shelter during the termination proceedings demonstrates a lack of ability to provide suitable housing and maintain a steady income.

In response, Cobb testified at the first hearing date, and argued again on appeal, that he did not know of any services he needed to complete. However, this argument is unpersuasive. Cobb had personal notice of the January 2000 dispositional hearing yet failed to appear. At the hearing, the trial court ordered him to complete services in a participation decree. Because of his failure to appear at the hearing after notice, Cobb had a duty to investigate what events transpired in his absence. A simple inquiry by Cobb would have uncovered the existence of the participation decree. Regardless, the MCOFC sent him a letter outlining several of the services he needed to complete. The evidence showed that Caseworker Cook mailed Cobb a letter in February 2000 informing Cobb of the need to complete certain services. Caseworker Cook also testified that he informed Cobb of the potential consequences of failing to do so. "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *In re L.S.,* 717 N.E.2d at 210.

Because Cobb failed to complete all of the required services, we conclude that there was sufficient evidence to support the trial court's finding that the conditions resulting in C.C.'s removal from Cobb's care and custody were not likely to be remedied.

■■■■ As to the third element, there is also sufficient evidence to show that termination of Cobb's parental rights is in C.C.'s best interests. The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.,* 717 N.E.2d at 208. Children are not removed from the custody of their parents just because there is a better place for them, but because the situation while in their parents' custody is wholly inadequate for their survival. *Carrera v. Allen County Office of Family & Children,* 758 N.E.2d 592, 595 (Ind.Ct.App.2001). "Because the ultimate purpose of the law is to protect the child, the parent-child relationship must give way when it is no longer in the child's best interest to maintain the relationship." *M.H.C. v. Hill,* 750 N.E.2d 872, 875 (Ind.Ct.App.2001). When determining what is in the best interests of the child, the trial court is required to look at the totality of the evidence. *In re A.K.,* 755 N.E.2d 1090, 1097 (Ind.Ct.App.2001). Here, the evidence shows that C.C. has lived with his foster family from the time he was ten days old. Since that time, Cobb has visited C.C. only one time. In addition, Caseworker Cook testified that reunification with Cobb was not recommended because Cobb failed to complete services. The Guardian Ad Litem (GAL) testified that giving Cobb more time to attempt to complete services was not in C.C.'s best interests because it continued to delay permanency in the child's life, which had already been prolonged for over two years without results. Because C.C. has lived with his foster family since birth and Cobb has only visited him once while failing to complete services, the evidence is

sufficient to find that the termination of Cobb's parental rights is in C.C.'s best interests.

Lastly, as to the fourth element, there was sufficient evidence presented at trial of a satisfactory plan for the care and treatment of C.C. following the termination of Cobb's parental rights, i.e., adoption. In particular, the foster parents, who have been caring for C.C. since his birth, intend to adopt C.C. The foster mother testified that her family had bonded to C.C. and had come to love him. In addition, both the GAL and Caseworker Cook testified that C.C.'s needs were being met by the foster parents. Because "adoption is a satisfactory plan," we conclude that there was sufficient evidence to support the trial court's finding that a satisfactory plan for the care and treatment of C.C. existed following the termination of Cobb's parental rights. *See id.* at 1098. Therefore, we find that there is sufficient evidence to terminate Cobb's parental rights as to C.C.

### Conclusion

We conclude that because the MCOFC mailed the hearing notice to Cobb's last known address as required by Indiana Trial Rule 5(B), dealing with the service of subsequent papers and pleadings, the notice met the requirements of Indiana Code § 31–35–2–6.5. We also conclude that Cobb's procedural due process rights were not violated because Cobb was represented at the final hearing date by counsel, Cobb previously had testified on his own behalf, and because Cobb did not have a constitutional right to be present at the termination hearing. Finally, because we find that Cobb knew he had to complete services but failed to do so, there was sufficient evidence to support the trial court's determination to terminate parental rights.

Judgment affirmed.

DARDEN, J., and NAJAM, J., concur.

*ORDER*

This Court heretofore handed down its opinion in this case on March 25, 2003, marked Memorandum Decision, Not for Publication.

The Appellee, by counsel, thereafter filed a Motion for Publication of Decision, which alleges that this Court's decision clarifies existing law regarding I.C. § 31–35–2–6.5, which pertains to the notice requirements for termination of the parent-child relationship proceedings and also clarifies the procedure required to meet the notice requirement of I.C. § 31–35–2–6.5.

The Court having examined said Motion, having examined its Memorandum Decision in this case and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED that the Appellee's Motion for Publication of Decision is GRANTED and this Court's opinion heretofore handed down on March 25, 2003, marked Memorandum Decision, Not for Publication, is now ORDERED published.