Bert EVERHART, Appellant–Respondent,

v.

SCOTT COUNTY OFFICE OF FAMILY AND CHILDREN, Appellee–Petitioner.

No. 72A01–0205–JV–155.

Court of Appeals of Indiana.

Dec. 18, 2002.

Alison T. Frazier, Eckert, Alcorn, Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Kerry Thompson, Houston and Thompson, P.C., Scottsburg, IN, Attorney for Appellee.

## OPINION

SULLIVAN, Judge.

Bert Everhart appeals from the trial court's decision terminating the parent-child relationship between him and his children, A.E. and S.E. He presents several issues for our review, which we restate as:

I. Whether the petition to terminate the parent-child relationship was so defective as to render the judgment void;

II. Whether his due process rights were violated; and

III. Whether the evidence was sufficient to support the termination of his parental rights.

We affirm.

On November 19, 2000, Detective Delmar Gross of the Indiana State Police be-gan an investigation of a report of physical abuse of and injury to two-month-old A.E. During interviews with Detective Gross, Everhart admitted to injuring A.E. on two occasions. Everhart indicated that during these occasions he had thrown A.E. and had struck her on the head with a kitchen ladle. Everhart also admitted to picking up A.E. and squeezing her head. As a result of these instances of abuse, A.E. suffered two skull fractures. Blood also had collected around her brain. A.E. suffered permanent injuries as a result of the abuse. A shunt has been inserted to drain fluid from her brain to her stomach, and future surgeries will be required to extend the tubing. A.E. is also subject to seizures as a result of the injuries and takes medication to control seizure activity.

Everhart was arrested for the abuse of A.E., and the children were placed in the custody of the maternal grandparents. While in the grandparents' custody, the children were adjudicated Children in Need of Services ("CHINS"). A.E. and S.E. remained in the custody of the maternal grandparents, who also had adopted two older siblings of A.E. and S.E. after Everhart and their mother had terminated their rights to those children. During this time, the mother of A.E. and S.E. voluntarily terminated her parental rights to the children.

While incarcerated pending action on criminal charges resulting from the abuse of A.E., Everhart had several counseling sessions with Scott Phillips, a social worker who also performed marriage and family counseling. During their conversations, Everhart discussed his own plight but did not discuss the events involving A.E. upon the advice of his counsel. Instead, he invoked his Fifth Amendment right against self-incrimination.

On October 30, 2001, Everhart pleaded guilty to Aggravated Battery as a Class B

felony and Neglect of a Dependent as a Class D felony. Everhart was sentenced to fourteen years incarceration. Following Everhart's guilty plea, the Scott County Office of Family and Children ("OFC") filed a petition for the involuntary termination of the parent-child relationship, which was granted by the trial court following a hearing on February 21, 2002.

## I

### *Validity of Termination Petition*

Everhart asserts that the petition to terminate the parent-child relationship was defective, and as a consequence, the trial court judgment was void. Specifically, Everhart challenges the failure of the petition to include all of the information which is required by Indiana Code § 31–35–2–4 (Burns Code Ed. Supp.2002).

Indiana Code § 31–35–2–4(b) lists the information which is to be included in the petition to terminate the parent-child relationship. It states that the petition must:

"(2) allege that:

(A) one (1) of the following exists:

(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;

(ii) a court has entered a finding under IC 31–34–21–5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and

the manner in which the finding was made; or

(iii) after July 1, 1999, the child has been removed from the parent and has been under the supervision of a county office of family and children for at least fifteen (15) months of the most recent twenty-two (22) months;

(B) there is a reasonable probability that:

(i) the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied; or

(ii) the continuation of the parent-child relationship poses a threat to the well-being of the child;

(C) termination is in the best interests of the child; and

(D) there is a satisfactory plan for the care and treatment of the child.

(3) Indicate whether at least one (1) of the factors listed in *section 4.5(d)(1) through 4.5(d)(3) [IC 31–35–2–4.5(d)(1) through IC 31–35–2–4.5(d)(3)]* of this chapter applies and specify each factor that would apply as the basis for filing a motion to dismiss the petition." (emphasis supplied).

Everhart challenges the validity of the petition because it did not include any reference to the factors listed in Indiana Code § 31–35–2–4.5 (Burns Code Ed. Supp. 2002) ("§ 4.5").[1]

---

1. (d) A party shall file a motion to dismiss the petition to terminate the parent-child relationship if any of the following circumstances apply:

(1) That the current case plan prepared by or under the supervision of the county office of family and children under IC 31–34–15 has documented a compelling reason, based on facts and circumstances stated in the petition or motion, for concluding that filing, or proceeding to a final determination of, a petition to terminate the parent-child relationship is not in the best interests of the child. A compelling reason may include the fact that the child is being cared for by a custodian who is a parent, stepparent, grandparent, or responsible adult who is the child's

Section 4.5 applies when a petition to terminate has been filed because the trial court has determined that "reasonable efforts for family preservation or reunification with respect to a child in need of services are not required," *or* when a child in need of services has been placed in the home of a related individual, a licensed foster family home, child caring institution, or group home, *and* when the child has been so placed for not less than fifteeri of the most recent twenty-two months.[2] Neither situation is applicable in this case as the petition was filed because the children had been removed from their parents for at least six months pursuant to a dispositional decree. Because the petition was filed based upon a ground to which § 4.5 is not applicable by definition, the grounds for dismissing a petition under § 4.5(d) also are not applicable to the present situation. Had the petition included a statement that 4.5(d) was not applicable, that would only be restating the obvious. No

benefit or due process protection would have been afforded to Everhart by making such a statement.

In a situation similar to that present here, in which § 4.5 does not apply because the grounds for seeking the petition to terminate the parent-child relationship are that the child has been removed from the parent for six months, the petition need not state that § 4.5 and the factors under § 4.5(d) do not apply. Failure to include such a statement in the petition does not render the petition defective or void.[3] The trial court did not err in ruling upon the termination petition because the petition was valid.

## II

### Due Process

 "The Due Process Clause of the U.S. Constitution and the Due Course of Law Clause of the Indiana Constitution

---

sibling, aunt, or uncle or a relative who is caring for the child as a guardian.

(2) That:

(A) IC 31–34–21–5.6 is not applicable to the child;

(B) the county office of family and children has not provided family services to the child, parent, or family of the child in accordance with a currently effective case plan prepared under IC 31–34–15 or a permanency plan or dispositional decree approved under IC–31–34, for the purpose of permitting and facilitating safe return of the child to the child's home; and

(C) the period for completion of the program of family services, as specified in the current case plan, permanency plan, or decree, has not expired.

(3) That:

(A) IC 31–34–21–5.6 is not applicable to the child;

(B) the county office of family and children has not provided family services to the child, parent, or family of the child, in accordance with applicable provisions of a currently effective case plan prepared under IC 31–34–15, or a permanency

plan or dispositional decree approved under IC 31–34; and

(C) the services that the county office of family and children has not provided are substantial and material in relation to implementation of a plan to permit safe return of the child to the child's home.

The motion to dismiss shall specify which of the allegations described in subdivisions (1) through (3) apply to the motion. If the court finds that any of the allegations described in subdivisions (1) through (3) are true, as established by a preponderance of the evidence, the court shall dismiss the petition to terminate the parent-child relationship.

2. It is important to note that these grounds for terminating a parent-child relationship are those listed in I.C. § 31–35–2–4(b)(2)(A)(ii) and (iii).

3. This decision is not to be interpreted to address the situation where a petition is filed upon a ground to which § 4.5 is applicable and the petition does not address whether any § 4.5(d) factors apply. We leave that decision for another day.

prohibit state action that deprives a person of life, liberty, or property without a fair proceeding." *In re Paternity of M.G.S.,* 756 N.E.2d 990, 1004 (Ind.Ct.App.2001), *trans. denied.* The Due Process Clause provides heightened protection against state interference with certain fundamental rights and liberty interests. *Id.* at 1005. The right to raise one's children is an essential, basic right, more precious than property rights, within the protection of the Fourteenth Amendment. *Id.*

 However, the right to raise one's children and establish a home is not absolute and must be subordinated to the children's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *In re L.S.,* 717 N.E.2d 204, 208 (Ind.Ct.App.1999), *trans. denied.* The purpose of terminating parental rights is to protect the children and not to punish the parent. *Id.* Thus, while parental rights are of a constitutional dimension, these rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.*

Everhart asserts that his right to due process was violated by the OFC offering him counseling services while the criminal charges were pending against him, and then using the fact that he invoked his Fifth Amendment right against self-incrimination during these counseling sessions as grounds to show that he had no interest in his children.[4] Everhart specifically contends that he was concerned that any statements made to the social worker

about the acts of abuse to A.E. would be used against him in the criminal proceedings which had not yet taken place. Upon the advice of his counsel, Everhart then chose not to discuss any information with the social worker which related to the criminal child abuse incidents.

In support of his contention that incriminating information relayed by him to the social worker could have been used against him in the criminal proceedings, Everhart directs this court to *Stone v. Daviess County Div. of Children and Family Servs.,* 656 N.E.2d 824 (Ind.Ct.App.1995), *trans. denied.* In reaching its decision, this court first noted that Indiana Code § 25–23.6–6–1[5] provides that, subject to certain exceptions, social worker-client communications are privileged. *Id.* However, the court also noted that the privilege which existed between physicians and patients had been abrogated by our legislature when the privileged communication was to be used in a termination proceeding. *Id. See also* Ind.Code § 31–34–12–6 (Burns Code Ed. Repl.1997); *Shaw v. Shelby County Dept. of Public Welfare,* 612 N.E.2d 557 (Ind.1993). This court then held that the social worker-client privilege did not apply in termination proceedings because it was inconceivable that the legislature had intended to abrogate the physician-patient privilege but not the social worker-client privilege. *Stone,* 656 N.E.2d at 831.

In this case, however, Everhart's concern was not that the information would

4. In his appellant's brief, Everhart seems to assert that his due process rights were violated by the OFC not pursuing an intermediate level of intervention in the parent-child relationship before seeking to terminate his parental rights. However, in his reply brief, he states that he was not seeking relief from the failure of the OFC to provide him with alternative services, but instead, focuses upon what he categorizes as the OFC's use of his refusal to fully cooperate in counseling in

order to gain termination of his parental rights. Nevertheless, Everhart requests that the termination be reversed and that he undergo a psychological assessment so that he might have an opportunity to fully utilize and benefit from counseling.

5. The current version of the statute is found in Burns Code Ed. Repl.1999.

have been used in a termination proceeding, but in the criminal proceeding. Indiana Code § 25–23.6–6–1 lists eight grounds upon which the privileged information may be disclosed by a social worker. Of most concern is exception number two, which states that information may be disclosed "[i]f the communication reveals the contemplation or commission of a crime or a serious harmful act." I.C. § 25–23.6–6–1(2). While not addressed by either party, it appears that this exception applies in the present case and that the social worker could have disclosed any information revealed by Everhart which would have indicated his guilt in the abuse of A.E. Therefore, Everhart's only recourse to protect himself was to invoke his Fifth Amendment right against self-incrimination as he did.

However, it is not entirely clear how this court should address Everhart's claim of violation of due process. Everhart does not direct this court to any law discussing the appropriate standard of review when addressing a claim such as he presents. We have found no case in Indiana which addresses a fact situation and argument similar to that relied upon by Everhart. However, we find instructive the test which is applied in determining whether the State's use of a defendant's silence in a criminal prosecution is harmless. While we recognize that the reasoning behind the prohibition of the use of a defendant's silence in a criminal case is different than the reasons upon which one may rely in finding a violation of due process in a termination of a parent-child relationship case, the factors relied upon in determining whether a violation of due process is harmless are applicable in both situations.

■ In *Bieghler v. State*, 481 N.E.2d 78, 92 (Ind.1985), *cert. denied* 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986), our Supreme Court specified the five factors which are to be utilized in determining whether the use, for the purpose of impeachment, of a defendant's silence at the time of arrest and after receiving *Miranda* warnings is harmless.[6] Applying those factors for review from a criminal case to the setting of a hearing for the termination of a parent-child relationship, the factors we consider are: (1) the use to which the fact of the invocation of the right against self-incrimination is used, (2) who elected to pursue the line of questioning, (3) the amount of other evidence supporting the termination of parental rights, and (4) the intensity and frequency of the reference.

■ Assuming that Everhart's due process rights were violated by the OFC's use of his assertion of his Fifth Amendment right against self-incrimination, it does not follow that he was harmed by the violation. The OFC offered into evidence, through the social worker, the fact that the counseling of Everhart was limited to issues not pertaining to the incidents of abuse to A.E. The purpose of the OFC's use of this fact appears to be to show that the counseling was limited in scope and that the social worker did not have all facts necessary to determine whether Everhart could be rehabilitated. From the standpoint of the OFC, the questioning on Everhart's invocation of his Fifth Amendment right against self-incrimination was limited. Everhart's counsel, on the other hand, repeatedly asked questions about the limited ability of the social worker to counsel Ev-

---

**6.** The five factors enunciated by our Supreme Court are: (1) the use to which the prosecution puts the post-arrest silence, (2) who elected to pursue the line of questioning, (3) the quantum of other evidence indicative of guilt, (4) the intensity and frequency of the reference, and (5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

erhart on the issues relating to the criminal issues regarding Everhart's relationship with his children, thereby drawing that issue into the forefront of the questioning.[7] The questioning of the State's witnesses, once directed to the lack of communication about the children, focused upon Everhart's lack of interest in what would happen to the children and not upon Everhart's desire to not discuss the details of the abuse.

Contrary to Everhart's assertion, the State's witnesses did not maintain that the petition to terminate the parent-child relationship was sought because Everhart refused to discuss the incidents of abuse. Instead, Melissa Hall, a family case manager with the Scott County OFC, stated that the termination of parental rights was being sought because of the requirement for safety of the children, the need for the children to have permanency, the fact that Everhart admitted that part of the problem leading to the abuse was that his wife did not pull her weight with the children and they had since divorced-making Everhart a single parent, and bonding issues between Everhart and the children. During cross-examination, Ms. Hall admitted that reunification may have been pursued had the criminal charges been dismissed, but that since they were not, termination was pursued upon that ground also. In response to Everhart's counsel's question of whether termination was pursued only because Everhart now had a conviction, Ms. Hall responded that it also would have depended on counseling. Although it appears from that answer that the lack of being able to communicate with Everhart about the abuse and what problems he may have had that counseling could have corrected did play a minor role in the filing of the petition to seek the termination of parental rights, that answer did not reveal that it was a consideration which weighed heavily upon the decision to file the petition. Instead, from the testimony, it is clear that several other factors were considered in filing the petition, including the requirement that a hearing be held because of the length of time that the children had been out of the home.

These facts, in conjunction with the rest of the evidence available to support the termination of the parent-child relationship, which will be addressed in detail in part III, *infra*, indicate that any violation of due process which Everhart may have suffered by the discussion of the invocation of his Fifth Amendment right against self-incrimination was harmless.

### III

### *Sufficiency of the Evidence*

■■■■■ To effect a termination of parental rights, the State must present clear and convincing evidence to establish the elements of I.C. § 31–35–2–4(b)(2). *In re L.S.*, 717 N.E.2d at 208. In reviewing a decision to terminate a parent-child relationship, this court will not set aside the judgment unless it is clearly erroneous. *In re E.E.*, 736 N.E.2d 791, 793 (Ind.Ct.App. 2000). Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences to support them. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind.Ct. App.2002). When reviewing the sufficiency of the evidence, this court neither reweighs the evidence nor judges the credibility of the witnesses. *In re E.E.*, 736 N.E.2d at 793.

■■■ Everhart makes several specific challenges to the trial court's findings which address the trial court's belief that the conditions which resulted in the children's removal would not be remedied and

---

7. Appellate counsel did not represent Ever- hart at the termination hearing.

that the continuation of the parent-child relationship posed a threat to the well-being of the children. The trial court's findings on these issues state:

"b. There is a reasonable probability that:

(1) The conditions that resulted in the children's removal and the reason for the placement outside the parents' home will not be remedied in that the children were removed because of physical abuse of the father resulting in injury to [A.E.] and failure of the mother to protect the children. The mother has previously voluntarily terminated her parental rights. The father injured [A.E.] on more than one occasion. His focus since being criminally charged with hurting [A.E.] has been on himself and not the children. Respondent previously voluntarily terminated his parental rights to two older siblings of [A.E.] and [S.E.]. At his criminal case sentencing Respondent asked the Court to allow him to live outside Indiana and stated that he would have no contact with the children.

(2) Continuation of the parent-child relationship poses a threat to the well-being of the children in that:

(a) The father has previously abused [A.E.] on more than one occasion.

(b) The father will be imprisoned for many years and will be unable to care for the children. [A.E.] has special medical needs he cannot provide. Those needs are caused by the injury inflicted by the father.

(c) The father at his criminal case sentencing indicated his willingness and intent to not be further involved in the lives of the children by his offer to leave the State and not see the children again." App. at 34–35.

This portion of the trial court's findings relates back to I.C. § 31–35–2–4(b)(2)(B)(i) and (ii). The subpart of the statute to which these findings relate is written in the disjunctive; it only requires that the trial court find either that there is a reasonable probability that the conditions which resulted in the children's removal from the home would not be remedied *or* that the continuation of the parent-child relationship poses a threat to the well-being of the child. *See In re L.S.*, 717 N.E.2d at 209. Therefore, the order to terminate the parent-child relationship will be upheld if either ground is supported by the evidence or reasonable inferences to be drawn therefrom.

We begin by addressing the portion of the findings which states that there was a reasonable probability that a continuation of the parent-child relationship posed a threat to the well-being of the children. Everhart first challenges the trial court's finding that he had abused A.E. on several occasions by stating that it did not establish a history or pattern of abuse. He also asserts that he was under a great deal of stress at the time of the abuse in that he was working to earn money to provide for the children, preparing the children's food, bathing them, and staying up all night with A.E. In addition, he claims that his former wife contributed to the stress because she was not assisting in the care of the children and that A.E. was prone to crying and unable to verbally communicate her needs.

While the two episodes of abuse during a two-week period do not show a long history of abuse, they do show a series of uncontrollable, violent conduct. Everhart admitted that when A.E. was crying, he picked her up by her head and squeezed

her head. He admitted to throwing A.E. and striking her on the head. These were acts which were committed upon A.E. because she would cry and, as Everhart stated, because he was under a great deal of stress. Based upon the two occasions during which a number of separate acts of abuse were committed upon two-month old A.E., the severity of the abuse, and Everhart's lack of interest in the well-being of the children while he was incarcerated, we cannot conclude that the trial court's finding that the abuse to the children would not change was clearly erroneous.

Everhart also claims that the trial court erred in determining that he would be imprisoned for many years and not able to care for the children. Everhart testified that he was sentenced to fourteen years incarceration. However, he now asserts that counting good time and other available credits, he will be out of prison in seven years. He believes that those seven years are not the "many years" which will threaten the children's well-being. Appellant's Brief at 14. Assuming that Everhart does get out of prison in seven years, he will have missed seven years of A.E. and S.E.'s lives, time which they will be living with their grandparents and their siblings and will be forming lasting relationships. During this time, Everhart will not be able to provide financially for the children, nor will he be able to provide for A.E.'s continuing medical needs. He will not be there to make sure that she gets her medication or that she gets to her doctor's appointments. Instead, Everhart will be incarcerated while someone else provides for his children. Upon his release from prison, there is no guarantee that Everhart will be able to provide for his children, or that he would ever get custody of them again. The needs of the children are too substantial to force them to wait from seven to fourteen years to

determine if Everhart would be able to provide for them.

Finally, Everhart challenges the trial court's finding that Everhart indicated his willingness to move to Georgia for treatment and to not see the children again. Everhart claims that he only meant that he would not see the children for the time period during which he was receiving treatment and for when he was ordered by the court to not have any contact with the children. However, it was well within the trial court's discretion to infer from his statement that he would give up any desire to see his children again if he would be allowed to go to Georgia for treatment. At his sentencing hearing, following his plea of guilty, Everhart stated:

"I know what I did was horrible and unexcusable and I have a hard time with it myself with this but if I'm allowed to participate in this half way program not only will I be out of State and have no contact with the children but I also make the promise that I would never come back to the State of Indiana if I'm allowed to participate in this Christian Halfway House because I intend to live in the State of Georgia for the rest of my life . . . ." App. at 19.

Everhart claims that taken in context, the statement reveals only that he wanted to rehabilitate himself, not trade his relationship with his children. We do not agree. Taken in context, the statement made by Everhart could be interpreted, as it was by the trial court, to seek leniency for his crimes in exchange for leaving the State of Indiana and never coming back. It is hard to imagine a situation in which Everhart would eventually regain custody of his children, who will remain located in Indiana, if he never returns to the State.

The trial court's findings relating to the reasonable probability that the continuation of the parent-child relationship posed

a threat to the children are not clearly erroneous as they are supported by the evidence and the reasonable inferences to be drawn therefrom. Because this ground is sufficient to support the termination of the parental rights, we do not address Everhart's claim of insufficient evidence pertaining to the findings that the conditions which resulted in the children's removal from the home would not be remedied.[8]

### Conclusion

The petition which was filed to terminate the parent-child relationship was not defective as the information which was not included on the petition was not applicable to this case. Everhart's due process rights were not harmed by any references to his invoking his Fifth Amendment right against self-incrimination during counseling sessions pending the resolution of his criminal case. Finally, the evidence was sufficient to sustain the termination of the parent-child relationship.

The judgment is affirmed.

BAILEY and MATHIAS, JJ., concur.

---

8. Everhart also alleges that, in any event, there were no grounds to terminate the parent-child relationship between him and S.E. as she never suffered any abuse. It is irrelevant that S.E. herself was not abused. The important fact is that Everhart had abused one of his children and that the trial court's findings that Everhart was unable to provide for his children applied to both children. The trial court did not err in terminating the parent-child relationship between S.E. and Everhart.