## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2020, 7:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy Karozos
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of E.S. (Minor Child) and

J.H. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

January 31, 2020

Court of Appeals Case No.
19A-JT-1767

Appeal from the Greene Circuit Court

The Honorable Erik C. Allen, Judge

Trial Court Cause No.
28C01-1902-JT-3

**Mathias, Judge.**

[1] J.H. ("Father") appeals the Greene Circuit Court's order terminating his parental rights to his minor child, E.S. He raises two issues, which we restate as:

  I.  Whether Father was denied due process when the trial court drew a negative inference from Father's invocation of his Fifth Amendment privilege against self-incrimination; and,

  II. Whether the trial court's order terminating Father's parental rights is supported by clear and convincing evidence.

[2] We affirm.

## Facts and Procedural History

[3] K.S. ("Mother") gave birth to E.S. on May 9, 2016. In October 2017, Mother and Father were found unconscious in a vehicle and in possession of methamphetamine, marijuana, and syringes. One-year-old E.S. was removed from Mother's and Father's care due to the parents' pending drug charges and on-going substance abuse issues. In addition, Father was in violation of a no-contact order obtained by Mother. On October 24, 2017, DCS filed a petition alleging that E.S. was a child in need of services ("CHINS"). E.S. was placed with her maternal great grandparents.

[4] The trial court found that E.S. was a CHINS and issued a parental participation order. Father was ordered to refrain from alcohol and drug use, participate in homebased counseling, complete a substance abuse assessment, submit to random drug screens, maintain stable housing and a legal source of income, and comply with any no contact orders. Father did not comply with the ordered

services and failed to appear at three review hearings held on March 19, July 9, and October 16, 2018. Father also failed to consistently visit with E.S.

[5] On June 7, 2018, Father pleaded guilty to Level 6 felony possession of methamphetamine and was ordered to serve eighteen months in the Greene County Jail with all but 150 days suspended. After Father was released from jail, DCS made a referral for supervised visitation, a substance abuse assessment, and treatment at the Hamilton Center. Father missed several sessions of his substance abuse program and was required to restart the program three times between August 2018 and February 2019. Father also had positive drug screens in January and February 2019.

[6] Because Father tested positive for methamphetamine and/or THC, on January 24, 2019, the State filed a petition to revoke his suspended sentence. In March 2019, Father admitted to the allegations in the petition and agreed to serve 210 days in a work release program. Father began to participate in DCS-referred services while he was serving his sentence in work release.

[7] On February 12, 2019, DCS filed a petition to involuntarily terminate Mother's and Father's parental rights to E.S. Fact-finding hearings were held on April 17 and June 19, 2019. Prior to the hearing, Mother agreed to voluntarily relinquish her parental rights to E.S. With regard to Father, the family case manager ("FCM") and court appointed special advocate ("CASA") agreed that he failed to address his substance abuse issues or demonstrate ability to provide a stable

home for E.S. They also testified that termination of Father's parental rights was in E.S.'s best interests. Tr. pp. 144–45, 171–72.

[8]     On June 10, 2019, the State filed a petition to revoke Father's probation alleging that Father tested positive for methamphetamine in May 2019. On the date of the June 19, 2019 hearing Father was incarcerated as a result of the petition to revoke. At the hearing, DCS moved to admit the June 10, 2019 petition to revoke Father's suspended sentence. Father objected. The trial court admitted the exhibit for the limited purpose of establishing that the State had filed a petition to revoke Father's probation. DCS then called Father as a witness. Father invoked his Fifth Amendment right against self-incrimination and refused to testify because of the pending criminal case.

[9]     On July 3, 2019, the trial court issued its order involuntarily terminating Father's parental rights to E.S. finding in pertinent part:

> 6. The father testified at the hearing conducted on April 17, 2019, but then asserted his 5th Amendment Privilege and did not testify when called by DCS at the hearing conducted on June 19, 2019. During his testimony the father acknowledged that he had not successfully completed his substance abuse program and was not aware that he had been required to re-start the group program 3 times. The father further acknowledged that he had not completed the substance abuse program because he is a "struggling addict." As of April 17, 2019, the father admitted that he continues to use methamphetamine and marijuana. The father testified that he believes the root of his addiction is childhood trauma that involved the loss of his mother when he was 14, and he has not had counseling or otherwise addressed this childhood issue. The father acknowledged that he did not comply with

services the first 8-9 months of the CHINS case because he felt hopeless. More recently the father has attended visits with the child and the visits have gone well and without any issues.

7. Drug screens were admitted that were collected on December 21, 2018, January 2, 10, 16, 24, and 28, 2019, and February 25, 2019, and all screens were positive for methamphetamine, and several were positive for marijuana as well.

8. Kent Huber is a therapist with Hamilton Center and a referral was made for him to provide services to the father beginning in August 2018. Mr. Huber's services began after the father decided to comply with services after being non-compliant the first 8-9 months of the CHINS case. Mr. Huber's group program is based on the Matrix Program and requires attendance at 2 meetings each week for 12 weeks (total of 24 meetings) and a client cannot miss more than 3 meetings without having to start over. The father was required to start over 3 times due to missing too many meetings and never successfully completed Mr. Huber's program. Mr. Huber testified that attendance is paramount to being successful in the program. The father had very inconsistent attendance at the group meetings and Mr. Huber characterized the father's progress with substance abuse treatment as "fairly minimal" until after the first TPR hearing on April 17, 2019. After the first TPR hearing on April 17, 2019, the father attended 15 sessions in a row while he was in the Greene County Community Corrections Work Release Program. The father's attendance ended when he was again incarcerated. Mr. Huber observed that the father participated well in group when he attended, but he has a limited support system and a strong support system is important. The father was referred for individual therapy at Hamilton Center but only had one session due to his work schedule, attending group sessions, and a lack of availability of staff at Hamilton Center. Mr. Huber opined that the program provided for the father was the appropriate service to meet his needs and address his addiction.

9. [Father] was charged . . . with Possession of Methamphetamine, a Level 6 felony, Invasion of Privacy, a class A misdemeanor, and Possession of Marijuana, a class B misdemeanor, and pled guilty to and was convicted of Possession of Methamphetamine, a Level 6 felony. In this same case a Petition to Revoke Suspended Sentence and an Amended Petition to Revoke Suspended Sentence have been filed that allege a violation of probation due to multiple positive drug screens, and a Negotiated Plea Agreement has been filed but an admission hearing had not yet been conducted at the time of the TPR hearings.

10. On June 10, 2019, a new Petition to Revoke Suspended Sentence was filed . . . that alleges the father tested positive for methamphetamine on drug screens administered on May 24, 2019 and May 29, 2019. This Petition is the basis for the father asserting his 5th Amendment Privilege to not testify and DCS requested the Court draw an adverse inference against the father for asserting this privilege. The Court does draw an adverse inference that the father violated probation due to continued substance abuse as alleged in the Petition to Revoke Suspended Sentence. This alleged substance abuse is during the period of time after the first TPR hearing on April 17, 2019, during which the father regularly attended group meetings while in work release and claims to be finally serious about rehabilitation.

11. Sahrayah Blackburn was appointed as the child's Court Appointed Special Advocate ("CASA") on or about July 2, 2018. The child was born with a heart defect and continues to have significant heart issues that require annual check-ups and close monitoring during many activities and in many circumstances. The CASA has observed the father to display periodic motivation in services with a quick lack of follow through. The CASA observed that the father's only sustained participation in services was after the first TPR hearing on April 17, 2019, during the time that he was in work release and he was in a structured and

monitored environment. However, the father's sustained participation ended when he was re-arrested on the latest [petition to revoke] (see paragraph 10 above). During the CASA's involvement the father has not successfully completed any services and she testified that he continues to use methamphetamine and marijuana. The father has been arrested four times during the life of the CHINS case and remains incarcerated at the time of the second TPR hearing on June 19, 2019. The CASA has observed the father to have a consistent pattern of short-term sobriety and then return to drug use. The CASA acknowledged that there were no concerns noted during the father's visits with the child and that the father and child have a bond, but she opined that termination of the parent-child relationship is in the best interest of the child. She further opined that the child is thriving in a stable and consistent home with the maternal grandparents and they are willing to adopt the child. The CASA testified that she believes the appropriate services have been referred for the father to meet his needs.

12. Ethan Brown has been the on-going FCM since January 23, 2019 . . . . FCM Brown has not observed any problems with the father interacting with services providers, however, he observed that the father was not substantially compliant with substance abuse treatment, random drug screens, or visits, during times that he was not in jail or work release. Through his involvement in the case FCM Brown opined that the father has not made any significant progress in addressing the underlying issues of substance abuse, transportation, housing, or stability in his life. At a case and family team meeting ("CFTM") on April 25, 2019, the father refused to discuss or address an alternative plan if the child was in his care and he had a relapse, and the father would only say he is not going to use. . . .

13. The Court finds persuasive the evidence presented by CASA and FCM Brown that the father has a history of short term sobriety followed by a return to his previous substance abuse, and

that the recent compliance with services after the first TPR
hearing on April 17, 2019, was a result of being a resident in the
work release program and having the services scheduled into his
day. Due to the father's continued pattern of using
methamphetamine and marijuana, with short periods of
compliance and sobriety, that has repeatedly resulted in his
incarceration up to the current time, it is unlikely that the
conditions that resulted in the child's removal will be remedied.

Appellant's App. pp. 9–11. The trial court also concluded that termination of Father's parental rights was in E.S.'s best interests.

[10] Father now appeals the trial court's order involuntarily terminating his parental rights to E.S.

## Standard of Review

[11] Indiana appellate courts have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

[12]    Father does not challenge any of the trial court's factual findings as being clearly erroneous. We therefore accept the trial court's findings as true and determine only whether these unchallenged findings are sufficient to support the judgment. *In re A.M.*, 121 N.E.3d 556, 562 (Ind. Ct. App. 2019), *trans. denied*); *see also T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012) (holding that when the trial court's unchallenged findings support termination, there is no error), *trans. denied*.

## I. Father's Refusal to Testify

[13]    During the April 2019 fact-finding hearing, Father testified that he was a drug addict and continued to use methamphetamine and marijuana. Tr. pp. 24–25. The hearing was continued to June 19, 2019, at which DCS called Father to testify. Father asserted his Fifth Amendment right against self-incrimination. Tr. pp. 126–27. DCS requested "an adverse inference be drawn against [Father] for refusing to testify. The adverse inference being that his testimony, if truthful, would be harmful to his case in this TPR trial." Tr. p. 128.

[14]    In addition, over Father's objection, the trial court admitted DCS Exhibit 4.1 which contained the State's June 10, 2019 Petition to Revoke [Father's] Suspended Sentence. Ex. Vol., Ex. 4.1. The State alleged that Father's suspended sentence should be revoked because Father tested positive for methamphetamine on May 24 and May 29, 2019. *Id*. The trial court admitted the exhibit for the limited purpose of establishing that the probation revocation petition was pending. Tr. p. 131.

[15] In its finding of facts and conclusions of law, the trial court drew "an adverse inference that the father violated probation due to continued substance abuse as alleged in the Petition to Revoke Suspended Sentence. This alleged substance abuse is during the period of time after the first TPR hearing on April 17, 2019, during which the father regularly attended group meetings while in work release and claims to be finally serious about rehabilitation." Appellant's App. p. 10. Father argues that the trial court violated his due process rights when it drew an adverse inference from the invocation of his Fifth Amendment privilege against self-incrimination.

[16] Our supreme court recently addressed this issue in *Matter of Ma.H.*, 134 N.E.3d 41, 46–47 (Ind. 2019), where they observed that "in any proceeding—civil or criminal—the Fifth Amendment protects an individual from being compelled to answer questions when the answers might be used in a future criminal proceeding." *Id.* at 46 (citations omitted). Consequently, "in CHINS and TPR proceedings, a court may not compel a parent's admission to a crime—if the admission could be used against him or her in a subsequent criminal proceeding—under the threat of losing parental rights." *Id.* at 46–47 (citing *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977) ("[W]hen a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered, that testimony is obtained in violation of the Fifth Amendment[.]")); *In re A.D.L.*, 402 P.3d 1280, 1285 (2017) (collecting cases)).

[17] However, our supreme court has held that in CHINS and termination proceedings, a trial court may "draw a negative inference from a claim of the

Fifth Amendment privilege against self-incrimination." *In re Ma.H.*, 134 N.E.3d at 47. Therefore, it was not improper for the court to infer that Father violated his probation in May 2019 by using methamphetamine as alleged in the State's petition to revoke his probation. And, as is addressed below, even without considering Father's most recent probation violation, the evidence is more than sufficient to support the trial court's order terminating Father's parental rights. For this reason, we note that even if the trial court had erred by drawing a negative inference from Father's invocation of his Fifth Amendment right against self-incrimination, the error would be harmless. *See Everhart v. Scott Cty. Office of Family & Children*, 779 N.E.2d 1225, 1232 (Ind. Ct. App. 2002), *trans. denied*.

## II. Clear and Convincing Evidence

[18]     Father also argues that the trial court's order involuntarily terminating his parental rights is not supported by clear and convincing evidence. Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

[19] DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *In re G.Y.*, 904 N.E.2d 1257, 1261 (Ind. 2009). But because Indiana Code subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of subsection 4(b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[20] Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[21] The purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to

the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d at 1259.

[22] First, Father claims that the trial court clearly erred by concluding that there was a reasonable probability that the conditions that resulted in E.S's removal from his care, or the reasons for E.S.'s continued placement outside Father's home, would not be remedied. When considering whether DCS has proven this factor by clear and convincing evidence, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156–57 (Ind. Ct. App. 2013), *trans. denied*. The trial court may disregard efforts made only shortly before termination and give more weight to a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[23] Father argues that the evidence is insufficient to support this factor because he "had been consistently participating in visitation and substance abuse treatment in the weeks leading up to his arrest."[1] Appellant's Br. at 22. But Father fails to

---

[1] Several pleadings, orders, and the chronological case summary in Father's pending criminal case were admitted into evidence at the fact-finding hearings. Ex. Vol., Exs. 4, 4.1. Therefore, we do not think it would be inappropriate to take judicial notice of the updated chronological case summary in Father's pending criminal case. *See e.g. Matter of D.P.*, 72 N.E.3d 976, 984 (Ind. Ct. App. 2017) (citing *Horton v. State*, 51 N.E.3d 1154, 1161–62 (Ind. 2016) (discussing judicial notice in light of the fact that court records are now more readily available due to implementation of the Odyssey case management system)). The petition to revoke Father's probation alleging that he used methamphetamine twice in May 2019 is still pending, and two amended petitions to revoke his probation have been filed. The trial court issued a warrant for Father's arrest after the second amended petition to revoke his suspended sentence was filed. Father also failed to appear for an evidentiary hearing on August 21, 2019.

acknowledge his extensive history of drug abuse, criminal convictions, and probation violations. He has not demonstrated ability to refrain from substance abuse and criminal conduct for any significant duration. Throughout the CHINS and termination proceedings, Father was unable to complete substance abuse treatment. He also attended only one session of individual therapy during these proceedings. Father has been able to maintain sobriety only when he is in structured and monitored environment, such as work release. Father's habitual conduct established that he cannot maintain a law-abiding and sober life. For all of these reasons, we conclude that clear and convincing evidence supports the trial court's determination that there is a reasonable probability that the conditions that resulted in E.S's removal from Father's care, or the reasons for E.S.'s continued placement outside his home, would not be remedied.[2]

[24] Father also argues that the trial court clearly erred in concluding that termination of his parental rights was in E.S.'s best interests. In determining what is in the best interests of a child, the trial court must look beyond the factors identified by DCS and look to the totality of the evidence. *A.D.S.*, 987 N.E.2d at 1158. In so doing, the trial court must subordinate the interests of the parent to those of the child and need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *Id.* Moreover, a

---

[2] Because Indiana Code subsection 31-35-2-4(b)(2)(B) is written in the disjunctive, we decline to address Father's additional claim that DCS failed to prove that continuation of the parent-child relationship threatens E.S.'s well-being. In re A.K., 924 N.E.2d at 220.

recommendation by the case manager or a child advocate is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158–59.

[25] The family case manager and CASA both testified that terminating Father's parental rights was in E.S.'s best interests. Tr. pp. 144–45, 171–72. Father's continued substance abuse and frequent incarcerations demonstrate that he is unable to provide and maintain a stable home for himself, much less an adolescent child. E.S. has been in her grandparents' care throughout these proceedings and is thriving in that placement. For all of these reasons, we conclude that clear and convincing evidence supports the trial court's finding that termination of Father's parental rights is in E.S.'s best interests.

## Conclusion

[26] Father has not established that the trial court violated his due process rights by drawing an adverse inference from Father's invocation of his Fifth Amendment privilege against self-incrimination. And overwhelming evidence supports the trial court's decision to terminate his parental rights to E.S. We therefore affirm the trial court's order involuntarily terminating Father's parental rights.

[27] Affirmed.

Kirsch, J., and Bailey, J., concur.